UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                    Plaintiff,

                                                    Case Number 87-10338-BC
v.                                                  Honorable David M. Lawson

REAL PROPERTY IN SECTION 9,
TOWN 29 NORTH, RANGE 1 WEST,
TOWNSHIP OF CHARLTON,
OTSEGO COUNTY, MICHIGAN,

                    Defendant,

DANIEL S. GAHAGAN,
MICHAEL J. GAHAGAN, and
AGNES RIDDLE-GAHAGAN,

                    Claimants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CLAIMANTS' MOTION FOR RECONSIDERATION, DENYING CLAIMANTS' MOTION TO STAY PROCEEDINGS, DENYING CLAIMANTS' MOTION FOR ATTORNEY FEES, AND ESTABLISHING CALENDAR DATES

Before the Court are the above-referenced motions. On March 24, 2004, the Court filed an

opinion after remand from the court of appeals in this forfeiture action in which the Court denied

the claimants' motions to dismiss and for summary judgment and granted the government's motion

for summary judgment. *See United States v. Real Property in Section 9, Town 29 North, Range 1*

*West, Tp. of Charlton, Otsego County, Michigan*, 308 F. Supp. 2d 791 (E.D. Mich. 2004).

Thereafter, the claimants filed a motion for reconsideration, which in many respects rehashed their

arguments in the last round of motions, but also included an argument that the Court engaged in

impermissible fact finding at the summary judgment stage of these proceedings. After reviewing

the record and revisiting the parties' motion papers, the Court is constrained to agree. Although the government certainly brought forth factual evidence to defeat the claimants' motions for summary judgment and to dismiss, the record contains facts that, when viewed in the light most favorable to the claimants, create a genuine issue of material fact on the question of whether the property was used to facilitate drug transactions or was acquired with the ill-gotten gains from drug dealing and therefore is subject to forfeiture. The Court, therefore, will grant the motion for reconsideration in part and set the matter for trial.

I.

The facts of the case are set forth in detail in the previous opinion, *Real Property in Otsego County, Michigan*, 308 F. Supp. 2d at 794-804, and they will not be repeated here except in connection with the present motions. The parts of the real property still in contention are those designated on the exhibit to the previous opinion as parcels C-1, D-1, and D-3. This litigation has been pending since 1987, and three different district judges have written opinions on various aspects of the case, in addition to an intervening trip to the court of appeals, which remanded the case "for further proceedings applying the new forfeiture statute to this case." *United States v. Real Property in Section 9, Town 29 North, Range 1 West Tp. of Charlton, Otsego County, Mich.*, 241 F.3d 796, 800 (6th Cir. 2001). The claimants point out that Judge James P. Churchill found that "fact questions abound whether Parcel C was used to facilitate the distribution of controlled substances," and he made a similar finding with respect to Parcel D1. Although the claimants have failed to point to the facts upon which Judge Churchill made his findings, they reason that the facts have not changed since Judge Churchill issued his memorandum opinion. In their view, Judge Churchill carefully reviewed the record – which this Court did not – and it is improper for this Court to

conclusively find that the bulk of narcotics were stored throughout Parcel D and witness Roger Dale Byars purchased and saw drugs in House B and on Parcel D after the September 12, 1986 search and seizure when all drugs were confiscated and in custody. The claimants further maintain that the statements attributed to Baily Sides that he saw drug activity and there was an attempt to build a green house, as recited in an affidavit submitted by the government after the close of discovery, "reek" of unconstitutionality and raise questions of this person's credibility.

The claimants believe that although the government's proffered evidence certainly may be persuasive, the Court may not determine the facts it recites as conclusive of the merits of the case. The Court, in the opinion of the claimants, acted as if it were conducting a bench trial: it found that a nonowner had crossed Parcel C, that a large supply of hemp seeds that could only grow rope show a cultivation plan, a broken triple beam scale was used to weigh drugs, and a non-existent road from Parcel B across to Parcel D is an undisputed issue of material fact. According to the claimants, the evidence submitted – testimony of Randall Zick, Roger Byars, Jerry Borema, Rudy Santus, George Riddle, Agnes Riddle-Gahagan, and court testimony of Thomas Pardee in addition to the claimants own affidavits – demonstrate that fact issue preclude summary judgment.

The claimants also contend that the government, which has the burden of proof, relied on the testimony of witnesses whose credibility is subject to question: Byars, who is a convicted felon, Jerry Borema, charged with malicious prosecution, conspiracy, and wrongful imprisonment, and Baily Sides, who failed to appear. Accepting this testimony at face value, they say, is erroneous when a fact finder might reject it. The claimants argue that this Court reviewed the same evidence that was before Judge Churchill, and with the enactment of the Civil Asset Forfeiture Reform Act of 2000 the government has a higher burden of proof. Therefore, they assert, it is impossible that

the fact issues detected by Judge Churchill would dissipate in the wake of a greater burden legislatively imposed on the government.

The claimants next argue that the Court was wrong when it did not revisit Judge Robert Cleland's proportionality ruling, which was not based on an Eight Amendment excessiveness analysis. They say that Judge Cleland employed a now-rejected decisional source – consideration of the statutory maximum fine authorized by the legislature. *See United States v. Bajakajian*, 524 U.S. 321 (1998). Further, the claimants claim, Judge Cleland did not consider the street value of the narcotics relative to the value of the property. *United States v. Certain Real Property Located at 11869 West Shore Dr.*, 70 F.3d 923, 930 (6th Cir. 1995). Last, the claimants state that the Sixth Circuit remanded this case with instructions to follow CAFRA, and according to them 18 U.S.C. § 983(g) requires the Court to conduct a hearing where the claimants can prove by a preponderance of the evidence that the forfeiture is grossly disproportionate.

The government first asserts that the motion for reconsideration is untimely because it was filed outside of the ten-day deadline. However, that time limit is not jurisdictional, and the Court may consider its ruling again in the interest of correcting legal errors. The government next argues that the claimants' motion lacks merit and does not demonstrate a palpable defect. According to the government, the motion is premised on a theory that Judge Churchill's observation in a memorandum opinion of October 1993 prevent a grant of summary judgment in the government's favor, despite several years of intervening litigation. The government argues that nothing in that opinion or in CAFRA requires a different disposition than the one this Court concluded was appropriate. The government explains that this Court carefully and correctly articulated the standard of review in this case. With respect to Parcel D, the government contends that the Court correctly

-4-

found that it had established its proceeds and facilitation theories by a preponderance of the evidence. Significantly, the Court observed that the claimants failed to rebut the evidence offered by the government with evidence that the land contract payments were made with legitimate income. There was no documentary proof, the government claims, that supported the Gahagans' arguments that they were working during the time in question, as this Court concluded. The government concludes that although the claimants disagree with the Court's ruling, such disagreement does not give rise to a palpable defect; there is no record evidence to which the claimants point that the Court overlooked.

With respect to Parcel C, the government argues that, as this Court found, evidence supported the government's facilitation theory and the claimants did not come forward with evidence giving rise to a factual dispute. In fact, the government continues, the Court repeatedly stated that the claimants had failed to provide evidentiary support for their positions as required by Federal Rule of Civil Procedure 56(e). The government contends that rather than meet their evidentiary burden, the claimants attack the credibility of witnesses that provide sworn testimony. The government argues that attacking credibility is not a sufficient substitute for the presentation of affirmative evidence.

## II.

The Court will grant a motion for reconsideration if the moving party shows: (1) a "palpable defect," (2) that misled the Court and the parties, and (3) that correcting the defect will result in a different disposition of the case. E.D. Mich. LR 7.1(g)(3). A "palpable defect" is a defect which is obvious, clear, unmistakable, manifest, or plain. *Fleck v. Titan Tire Corp.,* 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001). Furthermore, the Local Rules provide that any "motion for rehearing or

reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted."  E.D. Mich. LR 7.1(g)(3).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  Even where the parties have filed cross-motions for summary judgment, the Court must apply the well-recognized standards when deciding cross-motions; "[t]he fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate." *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003).  Thus, when this Court evaluates cross-motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506-07 (6th Cir. 2003).

The Court's error in deciding the last round of motions – and in granting the government's motion for summary judgment – is the failure to view the evidence in the light most favorable to the non-moving party: the claimants.  Although the government brought forth evidence from which it readily could be inferred that the property was subject to forfeiture under the preponderance-of-evidence standard, those factual inferences also could be rejected by a fact finder.

This Court found the following with respect to Parcel C:

The government has not carried its burden with respect to Parcel C under the proceeds theory.  Nor is there is any relevant or credible direct evidence of the use of Parcel C to facilitate a drug transaction.  There is, however, circumstantial evidence that supports the facilitation theory.  Judge Churchill found: "The record clearly establishes that Parcel B and D were used to facilitate drug transactions. Michael Gahagan was selling drugs on Parcel B while he was living on Parcel D. The most direct, convenient and private route between Parcels B and D is across Parcel C.  These facts, when considered with the testimony of the officers who

-6-

conducted the search, provide convincing circumstantial evidence of probable cause to believe that Parcel C was used as a frequent route of travel between Parcels B and D to facilitate the distribution of controlled substances." *See* dkt. # 403 at 18. The Court believes that these observations establish that it is more likely than not that Parcel C was used as a means of egress between Parcels B and D and thereby facilitated the drug trafficking activity that Judge Churchill described. The claimants have not come forward with contrary evidence, nor do they point to circumstances giving rise to a factual dispute. Thus, the government has met its burden of proof to forfeit Parcel C under the facilitation theory set forth in 21 U.S.C. § 881(a)(7).

*Real Property in Otsego County, Michigan*, 308 F. Supp. 2d at 808. This Court found the following

with respect to Parcel D:

With respect to Parcel D under the facilitation theory, Byars testified at his deposition that he purchased narcotics from the Gahagans at House B on Parcel D and saw illegal drugs stored on Parcel D. Gov't Mot. S. J. Ex. D, dep. of Byars at 33-37. In his last controlled buy, Byars initially went to House B to purchase drugs, indicating that drugs were likely stored there. He saw Michael's ledger book, which Michael used to facilitate his drug trafficking, at House B. Bailey Sides stated that he saw what appeared to be drug activity occurring at House B. Gov't Ex. K, aff. of Sides at ¶¶6-9. Sides also stated that the Gahagans were attempting to build a greenhouse above the garage and the government found a large supply of marijuana seeds in the Gahagans' possession. A triple beam scale was also found at House B, which supported the inference that drug transactions occurred there. Finally, it is appears to be undisputed that between May 1986 and August 1986, the only access the Gahagans had from Douglas Lake Road to Parcel B, where the evidence establishes that the bulk of the narcotics were stored, was across Parcel D. Thus, the government has established by a preponderance of the evidence that Parcels D1 and D3 are subject to forfeiture under the facilitation theory set forth in 21 U.S.C. § 881(a)(7).

With respect to Parcel D and the proceeds theory, the government has offered the direct evidence that some interests in Parcel D are proceeds from the Gahagans' drug sales. Susan Soper disclosed in her deposition testimony that at the time she was living with Michael Gahagan, she would, on more than one occasion, make land contract payments to Erma Brackenstose from the money received from drug sales. Gov't Ex. I, Soper dep. at 29-30, 44-45. The Gahagans have failed to rebut this testimony with evidence that the land contract payments were made with legitimate income. Although they state that they were working during this period and earning a salary, the Gahagans have not provided the Court with pay stubs or other documented proof that would support their contentions. It is more likely than not, therefore, that the proceeds used to pay for the property and to construct and furnish House B on Parcel D were derived from illegal drug sales. *See United States v.*

-7-

*Thomas*, 913 F.2d 1111, 1115 (4th Cir. 1990) (finding that because undisputed cash expenditures vastly exceeded the defendant's legitimate income, the government had probable cause for forfeiture); *United States v. Dusenbery*, 80 F.Supp. 2d 744, 754 (N.D. Ohio 1998) (holding that "the absence of legitimate income supports the finding of probable cause in a forfeiture action") (citing *United States v. Brock,* 747 F.2d 761, 763 (D.C. Cir.1984)).  Accordingly, the government has established, by a preponderance of the evidence, that Parcel D is subject to forfeiture under the proceeds theory, 21 U.S.C. § 881(a)(6).

. . .

      Next, the claimants state that Judge Churchill held that no controlled purchase took place on Parcel D.  That is true, but that fact does not overcome the evidence that a triple beam scale was found on Parcel D, suspicious drug-like activity occurred there, and Byars testified that he observed drugs stored on Parcel D.  Although the claimants refute Bailey Sides' testimony that individuals were going to House B to purchase narcotics by arguing that these individuals were contractors making bids to perform work on House B, this dispute alone will not defeat summary judgment because there is ample evidence in the record without Sides' testimony to establish that drug trafficking took place at House B.

*Id.* at 811-12.

Judge Churchill wrote the following about Parcel C in his October 1993 opinion:

Daniel Gahagan owns an undivided half-interest in Parcel C.  Daniel Gahagan and Agnes Gahagan have some form of joint-ownership of an undivided half-interest in Parcel C.

      Fact questions abound whether Parcel C was used facilitate the distribution of controlled substances and, if so, whether Daniel Gahagan is an innocent owner within the meaning of the applicable statute.  If Daniel Gahagan's interest in Parcel C1 is subject to forfeiture, it is the opinion of the Court that the forfeiture would include his one-half interest in the mineral rights in Parcels C1 and C2.  There is no viable theory pursuant to which Michael Gahagan's half-interest in the mineral rights to Parcel C can be forfeited.

Dkt # 499, Memorandum Op. at 4.  He stated the following about Parcel D:

Daniel and Michael are owners in common of Parcel D.  There are unresolved fact questions concerning the use of this parcel for the distribution of controlled substances by Michael Gahagan and concerning Daniel Gahagan's knowledge and consent with respect to Michael Gahagan's activities.

      If Michael Gahagan's interest in Parcel D are [sic] forfeited, it does not necessarily follow that Daniel Gahagan's interest therein will be forfeited.

-8-

> If the interest of either Michael Gahagan or Daniel Gahagan in Parcel D is forfeited pursuant to 21 U.S.C. § 881(a)(7), then that claimant's mineral interest in Parcels D1, D2, and D3 will be forfeited.
>
> The government has a viable alternative theory that a relatively small fractional interest in Parcel D may be subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) based upon contract payments made after mid-1984. A forfeiture pursuant to this theory would not include mineral interests because the mineral rights were not purchased pursuant to the contract.

*Id.* at 6-7.

The claimants do not point to the factual record underlying this opinion, and Judge Churchill does not make any citation to the record. However, this Court did not consider Judge Churchill's conclusion that fact issues precluded summary judgment as to whether Parcel C was used to facilitate the distribution of controlled substances. Nor did the Court look to Judge Churchill's opinion in determining that the government had met its burden. Although an inference may be drawn that Parcel C facilitated passage between Parcels B and D, that inference need not be drawn. Further, it may be coincidental that the scale was present on Parcel D. Assuming that Judge Churchill read the record correctly, it is hard to assault the claimants' logic: if factual issues existed under a lower standard of proof, how can they not exist under a higher burden?

The government answers this question by first stating that this Court was viewing *renewed* motions for summary judgment following remand from the Sixth Circuit and that the *specific* record did not demonstrate a genuine issue of material fact. The government believes that subsequent litigation has dispelled any of the fact issues to which Judge Churchill might have been referring. For example, the government claims that the claimants abandoned any innocent owner defense they had in proceedings before Magistrate Judge Charles E. Binder.

The government, however, only dispels the notion that an innocent owner defense might be available to Daniel Gahagan. It does not address the factual issues with respect to the drug

trafficking, which Judge Churchill found existed. The government does not point to evidence from the subsequent litigation that involves factual developments that detract from Judge Churchill's conclusion. However, the claimants make no record citation in their reconsideration motion to supporting evidence; they merely take issue with the credibility of certain witnesses. The government points out that credibility determinations are not appropriate in adjudicating motions for summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). However, when it is the plaintiff that moves for affirmative relief in the form of summary judgment, reliance on the testimony of witnesses whose credibility is pivotal to the claim requires the Court to pass on credibility *in favor* of the moving party, which is at odds with the familiar requirement that the Court must "'draw all reasonable inferences therefrom in a light most favorable to the non-moving party.'" *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

Moreover, the parties do not contend that Judge Churchill's analysis was incorrect. For example, the government did not seek reconsideration of Judge Churchill's decision with respect to Parcels C and D. Rather, the government sought reconsideration of Judge Churchill's finding that Agnes Gahagan was an innocent owner as matter of law. *See* Dkt. 509, Gov't Mot. Reconsideration. The government did not challenge these conclusions on appeal, and the Sixth Circuit did not find fault with Judge Churchill's analysis. *See Real Property in Otsego County, Mich.,* 241 F.3d at 799. The court of appeals reversed and remanded the case because CAFRA was enacted while the matter was pending. The court reasoned that the claimants should have the benefit of that statute's new standard of proof with respect to the parcels for which Judge Cleland granted the government's motion for summary judgment. Although following remand the parties renewed their respective motions for summary judgment, there is nothing to suggest that Judge Churchill's

-10-

reasoning that fact issues "abound" as to whether Parcels C and D were used to facilitate drug trafficking was misguided or plainly wrong.

Perhaps the strongest argument that a grant of summary judgment for the government was premature is Daniel Gahagan's original motion, in which Michael Gahagan joined, and its supporting documentation. For instance, Daniel Gahagen attaches his own affidavit, which states the following about Parcel C:

> 4.     The well worn pathway between Parcel D1 and Parcel B is a continuous pathway extending along the west shore of Douglas Lake and is used by local residents for passage between properties and access around the lake.
>
> 5.     To my knowledge, information, and belief at no time was the well worn pathway between Parcel D1 and Parcel B used to facilitate the sale of a controlled substance.
>
> 6.     To my knowledge, information and belief at no time was the well worn pathway between Parcel D1 and Parcel B used by me with the intent to facilitate the sale of a controlled substance.
>
> 7.     To my knowledge, information and belief at no time did Parcel C1 facilitate the sale of a controlled substance.
>
> 8.     To my knowledge, information and belief at no time was Parcel C1 used by me with an intent [to] facilitate the sale of a controlled substance.

Dkt # 412, Daniel Gahagan Mot. Summ. J., Daniel Gahagan aff. at ¶¶ 4-8.

Gahagan also points to the deposition testimony of what appears to be a law enforcement investigator, although the deposition excerpt contains no name. The individual testified that there was no direct evidence that Parcel C was use in connection with drug trafficking:

> Q.     Did you ever see in your investigation – did you ever see any foot traffic of Daniel Gahagan and Michael Gahagan or anybody else across property C1
> A.     Did I see them personally?
> Q.     Yes.
> A.     No, not that I know of.

> Q.    Did you ever see any type of – let's assume for the moment that building B
> is directly located on property D1, just with that assumption, did you ever see
> anybody making – conducting any activity either on – drug activity – either
> on parcel C1, C2, D2, D3, E1 or E2?
> . . .
> A.    No.

Dkt # 412, Daniel Gahagan Mot. Summ. J. Ex. B1, Unnamed dep.  With respect to Parcel C, the

Court finds that a fact issue exists and summary judgment should not have been granted.

In terms of Parcel D, Daniel Gahagan stated the following in his affidavit:

> 9.    To my knowledge, information and belief at no time did house B and/or
> Parcel D1/D3 facilitate the sale of a controlled substance.  House B was under
> construction and had no bathroom or kitchen facilities

> 10.    To my knowledge, information and belief at no time was house B and/or
> Parcel D1/D3 used by me with an intent to facilitate the sale of a controlled
> substance.

> 11.    To my knowledge, information and belief at no time was the 45 lb Ohaus
> triple beam scale ever used as a tool of the drug trade.  It was being stored in the
> basement of house B on Parcel D1, it was impractical for use as a tool commonly
> used by drug traffickers.

> 12.    To my knowledge, information and belief at no specific or relevant time
> causally connected to the meeting with Roger Byars on September 12, 1986 did I
> sleep in house B on Parcel D1.

> 13.    To my knowledge, information and belief at no time causally connected to
> the meeting with Roger Dale Byars on September 12, 1986 did I sleep in house B on
> Parcel D1 with an intent of facilitating illegal activity.

> 14.    To my knowledge, information and belief at no time prior to September 2,
> 1986 did Daniel S. Gahagan receive any information indicating that Parcel C 1
> and/or D1/D3 were used to facilitate the sale of a controlled purchase.

> 15.    To my knowledge, information and belief at no time did Daniel S. Gahagan
> ever consent to the use of Parcel C1 and/or D1/D3 to facilitate the sale of a
> controlled substance.

> 16.    To my knowledge, information and belief at no time were any of the mineral
> rights used or intended to be used to facilitate the sale of a controlled substance.  The

minerals have never been produced or developed and no proceeds have been derived thereof.

17.     To my knowledge, information and belief at no time were any of the  Parcel D land contract payments made to Erma Backentose derived from proceeds from the sale of a controlled substance. The rent from the cabins paid for the land contract payments.

18.     To my knowledge, information and belief at no time pervious to September 12, 1986 did Agnes Riddle-Gahagan receive any information indicating that any illegal activity was being conducted upon real property that is the subject to the above forfeiture proceeding.

Dkt # 412, Daniel Gahagan aff. at ¶¶ 9-18.

The Court believes, upon reconsideration, that there is a fact issue for which trial is necessary.  There certainly is circumstantial evidence to suggest that Parcel C was used to facilitate drug trafficking.  However, looking to Judge Churchill's opinion and the attached documentation submitted in support of the original motion for summary judgment, a second version of the events appears to be possible as well.  The same can be said for Parcel D.  Although there was testimony suggesting both a proceeds and a facilitation theory, that inference is not the only one in light of Judge Churchill's opinion and Daniel Gahagan's affidavit.

The claimants also raised as an issue that forfeiture of the remaining parcels – that is, parcels C-1, D-1, and D-3 – violates the Eighth Amendment's excessive fines clause.  The Court rejected that argument because Judge Cleland had rejected it previously and the Court determined not to revisit it.  However, this case was remanded by the court of appeals for reconsideration in light of CAFRA, and the statute includes a specific provision addressing proportionality:

(g) Proportionality.–
(1) The claimant under subsection (a)(4) may petition the court to determine whether the forfeiture was constitutionally excessive.
(2) In making this determination, the court shall compare the forfeiture to the gravity of the offense giving rise to the forfeiture.

-13-

(3) The claimant shall have the burden of establishing that the forfeiture is grossly disproportional by a preponderance of the evidence at a hearing conducted by the court without a jury.

(4) If the court finds that the forfeiture is grossly disproportional to the offense it shall reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution.

18 U.S.C. § 983(g)

Recently, the Sixth Circuit stated the Eighth Amendment inquiry as follows:

The Eighth Amendment "excessive fines" clause applies to civil forfeitures. *Austin v. United States*, 509 U.S. 602 (1993). . . . "A punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportionate to the gravity of a defendant's offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

*Ross v. Duggan*, 402 F.3d 575, 589 (6th Cir. 2004).

In Judge Cleland's order found at docket no. 609, it appears that he fully considered the claimants' issues under the Eighth Amendment. However, there are two reasons for concern, both statutory. First, it is unclear what standard of proof Judge Cleland relied on. CAFRA mandates a preponderance-of-evidence standard. *See* 18 U.S.C. § 983(g). Second, although it appears that the claimants have presented their arguments to Judge Churchill, Judge Cleland, and this Court, they have not received the hearing contemplated under the statute. *Ibid.* For those reasons, the Court will permit the claimants an opportunity to present their statutory arguments during a hearing.

The claimants also raise again the issue whether they were deprived of a pre-seizure hearing and cite *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993). The Court addressed that issue in the earlier opinion, and the claimants raise no new arguments. They do not explain how, in light of the Court's reasoning that *James Daniel Good* was satisfied, there was any palpable defect. This theory for reconsideration lacks merit.

-14-

Finally, Daniel Gahagan on behalf of his mother, Agnes Riddle-Gahagan, moves for attorneys fees under CAFRA. This motion is premature and perhaps without merit. The pertinent statute provides:

> (b)(1) Except as provided in paragraph (2), in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for –
> (A) reasonable attorney fees and other litigation costs reasonably incurred by the claimant;
> . . .
> (2)(C) If there are multiple claims to the same property, the United States shall not be liable for costs and attorneys fees associated with any such claim if the United States –
> . . .
> (iv) prevails in obtaining forfeiture with respect to one or more of the other claims.

28 U.S.C.A. § 2465 (emphasis added). A determination of attorneys fees for one claimant cannot be made until the whole case is resolved because if the government prevails with respect to the other claimants at trial, the government "shall [not] be liable for . . . reasonable attorney fees." *Ibid.*

### III.

The Court concludes that it committed palpable error in granting the government's motion for summary judgment, and correction of the error will lead to a different outcome. The Court, therefore, will grant the motion for reconsideration in part and schedule a trial to permit a fact finder to determine whether parcels C-1, D-1, and D-3 are subject to forfeiture. At that hearing, the claimants may present evidence to the Court on the question of proportionality.

Accordingly, it is **ORDERED** that the claimants' motion for reconsideration [dkt # 744] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the motion to stay proceedings [dkt # 744] is **DENIED**.

It is further **ORDERED** that the claimants' motion for attorney fees [dkt # 746] is **DENIED**.

-15-

It is further **ORDERED** that trial shall commence on **October 24, 2006 at 8:30 a.m.**

It is further **ORDERED** that the parties shall appear for a final pretrial conference on **October 10, 2006 at 2:30 p.m**.

It is further **ORDERED** that the parties shall submit a proposed final joint final pretrial order in accordance with the procedures set forth below on or before **October 3, 2006**; and the parties may file motions *in limine* on or before **September 5, 2006**.

It is further **ORDERED** that parties follow the following formalities with respect to the joint final pretrial order and conference:

A.    Counsel for all parties are directed to confer *in person (face to face) at their earliest convenience* in order to (1) reach any possible stipulations narrowing the issues of law and fact, (2) deal with non-stipulated issues in the manner stated in this paragraph, and (3) exchange documents that will be offered in evidence at the trial.  It shall be the duty of counsel for plaintiff to initiate that meeting and the duty of other counsel to respond to plaintiff's counsel and to offer their full cooperation and assistance.  If, after reasonable effort, any party cannot obtain the cooperation of other counsel, it shall be his or her duty to communicate with the Court.  Counsels' meeting shall be had sufficiently in advance of the date of the scheduled final pretrial conference with the Court so that counsel for each party can furnish all other counsel with a statement of the real issues the party will offer evidence to support, eliminating any issues that might appear in the pleadings about which there is no real controversy and including in such statement issues of law as well as ultimate issues of fact from the standpoint of each party.  *Counsel for plaintiff then will prepare a draft joint final pretrial order and submit it to opposing counsel, after which all counsel will jointly submit[1] the original and one copy of the final draft of the proposed joint final pretrial order to the Judge's chambers (or in open court, if so directed) on the date fixed for submission.*  All instructions contained within this order *must* be followed carefully; they will be binding on the parties  at trial.  If there are any pending motions requiring

_____

[1]Counsel for plaintiff has primary responsibility for preparation of the final pretrial order and, in that respect, for its submission to opposing counsel in ample time for revision and timely filing.  Nonetheless, full cooperation and assistance of all other counsel are required for proper preparation of the final pretrial order and therefore must be extended.

determination in advance of trial,[2] they should specifically be called to the Court's attention not later than the date of submission of the final pretrial order.

The proposed joint final pretrial order should provide for the signature of the Court, which, when signed, will become an Order of the Court. *AN ORIGINAL AND ONE COPY IS TO BE SUBMITTED IN THE PROPER FORM WITH CHAMBERS, NOT THE CLERK'S OFFICE.*

***THE PROPOSED JOINT FINAL PRETRIAL ORDER SHALL STRICTLY COMPLY WITH THE PROVISIONS AND REQUIREMENTS OF L.R. 16.2, EXCEPT AS THIS COURT MAY OTHERWISE PROVIDE HEREIN.***

B.   The following persons and entities shall *personally* attend the final pretrial conference:
   1)   **Trial counsel** for each party;
   2)   **All parties** who are natural persons;
   3)   **A representative** on behalf of any other party;
   4)   **A representative of any insurance carrier** which has undertaken the prosecution or defense of the case and has contractually reserved to itself the ability to settle the action.

Representatives must possess full authority to engage in settlement discussions and to agree upon a full and final settlement. "Full authority" is authority that exceeds the level of the last demand by the plaintiff.

"Personal attendance" by each party is not satisfied by (1) trial counsel professing to have full authority on behalf of the client or (2) a party being available by telephone.

Any party who disregards these requirements may be sanctioned pursuant to Fed. R. Civ. P. 16(f). Possible sanctions include fines, cost, fees, foreclosure of witnesses, or loss of claims or defenses.

Requests for adjournment of the final pretrial conference should be made in accordance with section XIII of this Order.

C.   At least ***ONE WEEK*** prior to the trial date all counsel shall furnish to the court the following in proper form:

   1   Any requests for *VOIR DIRE* and proposed *JOINT JURY INSTRUCTIONS*. In jury cases, the parties are hereby ordered to meet and confer prior to trial to discuss jury

---

[2]This includes motions *in limine*, disputes over specific jury instructions or the admissibility of any evidence at trial upon which the parties desire to present authorities and argument to the Court.

-17-

instructions. No later than one week prior to the first day of trial, the parties are to file with the court a single set of proposed, stipulated jury instructions. The Court will provide proposed opening and closing instructions, and counsel are responsible for all instructions related to their specific claims or defenses. All such instructions are to be submitted in typewritten form (double spaced) and on computer disk compatible with WordPerfect version 12.0; each instruction shall contain references to authority (e.g., "Devitt and Blackmar, Section 11.08"); and each instruction shall be contained on a separate page. In addition, each party shall separately file any additional proposed instructions (in the same form) to which any other party objects. The parties must make a concerted, good faith effort to narrow the areas of dispute and to discuss each instruction with a view to reaching agreement as to an acceptable form.

2.      A statement of claims or defenses, no longer than two pages, suitable to be read to the jury during opening instructions.

D.      Exhibits During Trial.

1.      Counsel are required to mark all proposed exhibits in advance of trial; the preferred method is to use the traditional "Plaintiff's Exhibit __" (yellow) and "Defendant's Exhibit __" (blue) stickers, but any clearly marked method is acceptable. A consecutive numbering system should be used by each party. Numbers used by one party shall not be used by other parties.

2.      **COUNSEL ARE REQUIRED TO KEEP TRACK OF ALL ADMITTED EXHIBITS DURING TRIAL, AND *ONE WEEK* PRIOR TO TRIAL SHALL SUBMIT AN EXHIBIT LIST USING THE ATTACHED EXHIBIT FORM.**

3.      If exhibits are voluminous, exhibits used for each witness should be bound separately, and binders should be provided to the Court and each juror.

4.      Counsel must confer and purge from one set of binders or files all exhibits not admitted during the course of trial. Such exhibits should be ready to be turned over to the jury foreperson prior to closing jury instructions so that jury deliberations are not delayed.

5.      It is the responsibility of the parties to see that the record is complete; at the conclusion of trial, all trial exhibits, briefs, proposed jury instructions, etc. are to be e-filed, or filed with the Clerk's Office on the 3rd floor in accordance with the Local Court Rules.

6.      The Court requires full disclosure to opposing counsel of computer generated visual or animated evidence and full disclosure of underlying data.

-18-

7.      Any party intending to use electronic aids to display evidence at trial shall disclose that intention to the Court and all other parties at or before the final pretrial conference.  Parties are responsible for providing equipment for such purpose.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: April 12, 2006

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 12, 2006.

s/Tracy A. Jacobs
TRACY A. JACOBS

---

-19-

**PLAINTIFF'S EXHIBITS**
**DEFENDANT'S EXHIBITS**

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |