UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                       Case Number 87-10338-BC
v.                                        Honorable Thomas L. Ludington

REAL PROPERTY IN SECTION 9,
TOWN 29 NORTH, RANGE 1 WEST,
TOWNSHIP OF CHARLTON,
OTSEGO COUNTY, MICHIGAN,

        Defendant,

DANIEL S. GAHAGAN,

        Claimant.

_____/

## OPINION AND ORDER DENYING CLAIMANT'S PETITION PURSUANT TO THE EXCESSIVE FINES CLAUSE OF THE EIGHTH AMENDMENT, DENYING MOTION FOR ATTORNEY FEES, DENYING CLAIMANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW, GRANTING GOVERNMENT'S MOTION FOR JUDGMENT AS TO THE CLAIMS OF MICHAEL GAHAGAN, AND SCHEDULING EVIDENTIARY HEARING

This case proves that time does not cure all problems. Indeed, the immediate issues before the Court are the product of nearly twenty years of litigation, major statutory and case law changes, and an appellate trip to the Sixth Circuit. In 1987, the government filed a verified complaint seeking to forfeit certain parcels of real property located in Otsego County, Michigan. At the time, the property was divided into nine parcels. After substantial litigation including various concessions by the parties, however, the dispute substantially narrowed in scope to focus on Parcels C-1, D-1, and D-3 as depicted in exhibit 1.

In 1997, the second judge to preside in this matter, Judge Robert H. Cleland, entered judgment against the claimants, then Daniel Gahagan, his brother Michael Gahagan, and his mother

Agnes Gahagan.  Judge Cleland determined that the claimants were unable to overcome the government's probable cause showing, were unable to prove their affirmative defenses, and made no showing that forfeiture of Parcels C-1, D-1, and D-3 violated the Excessive Fines Clause of the Eighth Amendment and the Double Jeopardy Clause of the Fifth Amendment.  Thereafter, the claimants appealed Judge Cleland's rulings to the Sixth Circuit.

While the case was pending on appeal, Congress enacted the Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 983 (2000).  That statute substantially altered the landscape of litigation in civil *in rem* forfeiture actions.  CAFRA  heightened the government's burden of proof and included a presumption against seizure of real property during civil forfeiture proceedings.  The statute also requires a pre-seizure hearing at which the claimants are entitled to notice and a chance to be heard and at which the government must demonstrate that other remedies available to it short of seizure are insufficient to protect its interest in the real estate subject to forfeiture.  The Sixth Circuit Court of Appeals held that CAFRA was remedial legislation and as a result applied to the remaining claims in this case.  *See United States v. Real Property in Section 9, Town 29 North, Range 1 West, Tp of Charlton, Otsego County, Mich.*, 241 F.3d 796 (6th Cir. 2001).  Consequently, the case was remanded to this Court's predecessor, Judge David M. Lawson, the third judge to preside over the matter, "for further proceedings applying the new forfeiture statute to this case." *Id.* at 800.

Following remand, the parties filed among other things renewed cross motions for summary judgment.  On March 23, 2004, in a written opinion, Judge Lawson found that "the government has satisfied the requirements of CAFRA, the claimant's motions lack merit, and the government is entitled to a judgment of forfeiture of Parcels C1, D1, and D3." *United States v. Real Property in*

-2-

*Section 9, Town 29 North, Range 1 West, Tp of Charlton, Otsego County, Mich.* 308 F. Supp. 2d

791, 794 (E.D. Mich. 2004). A motion for reconsideration followed, which Judge Lawson granted

on April 12, 2006. *See United States v. Real Property in Section 9, Town 29 North, Range 1 West,*

*Tp of Charlton, Otsego County, Mich,* 2006 WL 950371 at *1 (E.D. Mich. 2006) (unpublished)

(finding that "[a]lthough the government certainly brought forth factual evidence to defeat the

claimants' motions for summary judgment and to dismiss, the record contains facts that, when

viewed in the light most favorable to the claimants, create a genuine issue of material fact on the

question of whether the property was used to facilitate drug transactions or was acquired with the

ill-gotten gains from drug dealing and therefore is subject to forfeiture. The Court, therefore, will

grant the motion for reconsideration in part and set the matter for trial").

On October 24, 2006, the case went to trial. The jury returned a special verdict on November

1, 2006 finding that Parcels C-1 and D-1 were subject to forfeiture on both facilitation, *see* 21 U.S.C.

§ 881(a)(7), and proceeds theories. *See* 21 U.S.C. § 812(a)(6). Further, it determined that, although

Parcel D-3 was acquired or improved with proceeds from illegal drug trade, Daniel Gahagan was

an innocent owner of that parcel. Finally, the jury concluded that only ten percent of the parcels

were "derived from legitimate income." Dkt # 799, Special Verdict Form.

This matter is now before the Court on several post-trial motions filed primarily, but not

solely, by the remaining claimant in this case, Daniel Gahagan ("Gahagan"): (1) a motion by

Gahagan for property tax relief and damages; (2) a petition by Gahagan pursuant to the Excessive

Fines Clause of the Eighth Amendment; (3) a motion for entry of judgment by the government

against Michael Gahagan and any claims he may have had; (4) a motion by Gahagan, purporting to

be the executor of his late mother and former claimant Agnes Gahagan's estate, for attorney fees as

-3-

a prevailing party under CAFRA; and (5) a motion by Gahagan for judgment as a matter of law. The parties have filed responses to the respective submissions.

The Court has considered the parties' submissions and heard oral argument on February 20, 2007 with counsel for the government present and Daniel Gahagan participating by telephone. Michael Gahagan listened to the argument telephonically with the consent of the Court. The Court now concludes that the claimant's motions, save for his motion for property tax relief and damage, lack merit, the government is entitled to a judgment against the claims of Michael Gahagan, and an evidentiary hearing is necessary to resolve Daniel Gahagan's claims for tax relief and damages.

## I.

The basic factual background to this case is set forth above and does not merit further explication except in the context of the analysis of the individual motions. Exhibit 1 to this opinion graphically depicts the property and the parcels at issue here.

## II.

### A. *Motion For Relief From Property Tax and Damages*

Claimant Gahagan maintains that because the government seized the property, effectively barring him and his family from its beneficial use, the government is responsible for both damages to the property and the real estate tax arrearage for Parcel D-3 that have occurred over the years. As of February 2007, approximately $48,438.22 was owed on Parcel D-3 in back property taxes. The present market value of Parcel D-3 is approximately $109,890.

Gahagan's argument for damages primarily focuses on Parcel E, which was addressed before trial. Parcel E has somewhat of a contentious history, at least as alleged in Gahagan's papers.

According to Gahagan, the government initiated its *in rem* forfeiture action with respect to Parcel E on November 12, 1987 and recorded a notice of lis pendens in Otsego County, Michigan. He claims that the United States Marshal Service seized Parcel E: it held the property in custody "with no right of entry." Claimant's Mot. Property Tax Relief at 5 n. 5. After the government seized the property, oil and gas reserves were discovered in the surrounding area, and that location soon became "one of the largest production fields in Northern America." He notes that in an opinion dated August 28, 1992, the original presiding judge in this action, Judge James P. Churchill, determined that there "was no evidence, direct or circumstantial, that Parcel E was used to facilitate the drug distribution of controlled substances." *Id.* at 6; Dkt # 403, Memorandum Op. at 18 (Aug. 28, 1992). Apparently, in a later opinion, Judge Churchill further concluded "Parcel E was found to have been fully purchased without illegal proceeds and '[n]o interest in Parcel E was found subject to forfeiture in this suit.'" *Ibid*; Dkt # 499, *Ex-Parte* Memorandum Op. at 7 (Oct. 29, 1993).

Despite Judge Churchill's findings, Gahagan maintains, the government continued to hold Parcel E in custody. The government position was that a majority of the claims of the parties remained unresolved and the order was not final for purposes of Federal Rule of Procedure 54(b). (providing "[w]hen more than one claim for relief is presented in an action . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment

-5-

adjudicating all the claims and the rights and liabilities of all the parties").

Gahagan contends that the government continued to remain unwilling to release the property. In fact, in 1995, he filed a motion to lift the lis pendens. The government opposed and requested "that the lis pendens . . . arising out of this matter be left intact pending resolution of the government's Rule 59(e) motion and any subsequent appeals." *Id.* at 7. On June 22, 1996, Judge Robert Cleland, then presiding, continued the lis pendens. The lis pendens remained in effect until November 15, 1999 when Gahagan ultimately was successful on a second motion to lift the lis pendens. The government sought authorization to appeal the disposition of Parcel E, but was unable to obtain the approval of the Solicitor General. The lis pendens was discharged on December 10, 1999. Gahagan's motion for damages, filed with the second motion to lift lis pendens, was denied for lack of subject matter jurisdiction because the matter otherwise was on appeal to the Sixth Circuit.

The gist of Gahagan's argument for damages is that while the government held parcel E of the property from the time of seizure in 1987 until its release in 1999, it preempted Gahagan's property rights by refusing to allow, after repeated requests, energy companies to extract oil and gas from that parcel. At the hearing, Gahagan made the further allegation that certain companies essentially trespassed onto the property and used a procedure called angle or slant drilling to drain Parcel E of its natural resources. The government believes that any cause of action that the claimant may have for the trespass is against the trespassing parties themselves alone and not against it. Further, the government contends that any claim is time barred because Gahagan was on notice in 1995 that damages to Parcel E may have occurred.

Parcel D-3's history is less contentious, and that parcel was the subject of litigation at trial.

-6-

Daniel Gahagan's mother, Agnes Gahagan, bought that property in 1975. Later that year, she transferred her ownership in all of Parcel D to Gahagan and his brother Michael Gahagan. The Gahagan brothers made payments on a promissory note to their mother that was secured by a mortgage until November 2, 1987 when a warranty deed was executed indicating that the mortgage note had been paid in full for $55,000. Later that month, the government initiated civil forfeiture proceedings and the property was seized. On August 24, 2004, Michael Gahagan conveyed his ownership in Parcels D-1 and D-3 to Gahagan by way of a quit claim deed. At trial, Parcel D-1 was found to be subject to forfeiture, and the jury found that Gahagan was not an innocent owner of that property. Parcel D-3 similarly was found to be subject to forfeiture; however, Gahagan prevailed as an innocent owner with respect to that parcel. Therefore, the focus of Gahagan's motion for relief from property tax is Parcel D-3.

The claim for tax relief follows logic similar to the arguments Gahagan advanced as to Parcel E. In Gahagan's view, the government seized the property, without probable cause, and without a hearing under *James Daniel Good*. Seizure, he argues, without fundamental due process also bolsters his contention that the government ought to pay for the trespass and removal of natural resources. Gahagan argues that he and his family were denied access to the property and that the care and responsibility for the property, including paying property tax, was that of the government. Title to the property, Gahagan maintains, effectively passed to the government during the time it unlawfully held the property.

The government disagrees. It insists that Gahagan was welcome to pay the property taxes over the years believing that he would prevail at trial. Further, the government disputes that the claimant was denied all access to the property. In fact, for a short period of time, the government

-7-

permitted Michael Gahagan to live on the property before his sentencing hearing.  Michael Gahagan, the government emphasizes, left the property unsecured when he left.  In addition, the government points out that under an order issued by Judge Churchill, a process was established to allow the Gahagan family access to the property.  Although the government concedes that the U.S. Marshall Service changed the locks to the dwellings, the government engaged a third-party property manager that was available to accompany and allow the Gahagans access to the buildings.  Ultimately, it is the government's position, the Gahagans chose not to avail themselves of this system.  Moreover, the government acknowledged at the hearing that it secured the property by placing signs indicating that the property had been seized, but did nothing more because the land was largely undeveloped. Finally, the government surmises that any deficiency under *James Daniel Good* was more than adequately addressed by the findings of the jury based on evidence presented at trial.

In *United States v. James Daniel Good*, 510 U.S. 43 (1993), the Supreme Court held that the Fifth Amendment's Due Process Clause required notice and an opportunity to be heard before a seizure of real property subject to forfeiture can be had.  *Id.* at 53 (reasoning that "[t]he right to prior notice and a hearing is central to the Constitution's command of due process.  'The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment to minimize substantively unfair or mistaken deprivations of property'").  The *Good* Court also explained that the government generally should protect its interest in real property with means less restrictive than seizure:

> The Government's legitimate interests at the inception of forfeiture proceedings are to ensure that the property not be sold, destroyed, or used for further illegal activity prior to the forfeiture judgment. These legitimate interests can be secured without seizing the subject property.

-8-

Sale of the property can be prevented by filing a notice of lis pendens as authorized by state law when the forfeiture proceedings commence. 28 U.S.C. § 1964; and *see* Haw. Rev. Stat. § 634-51 (1985) ( lis pendens provision). If there is evidence, in a particular case, that an owner is likely to destroy his property when advised of the pending action, the Government may obtain an ex parte restraining order, or other appropriate relief, upon a proper showing in district court. See Fed. Rule Civ. Proc. 65; *United States v. Premises and Real Property at 4492 South Livonia Road*, 889 F.2d 1258, 1265 (CA2 1989). The Government's policy of leaving occupants in possession of real property under an occupancy agreement pending the final forfeiture ruling demonstrates that there is no serious concern about destruction in the ordinary case. Finally, the Government can forestall further illegal activity with search and arrest warrants obtained in the ordinary course.

*Id.* at 57-58.

When Congress enacted CAFRA, it codified this general presumption against seizure in the ordinary case. Title 18, section 985(b)(1)(A)(B) of the United States Code provides:

(b)(1) Except as provided in this section--

(A) real property that is the subject of a civil forfeiture action shall not be seized before entry of an order of forfeiture; and

(B) the owners or occupants of the real property shall not be evicted from, or otherwise deprived of the use and enjoyment of, real property that is the subject of a pending forfeiture action.

(2) The filing of a lis pendens and the execution of a writ of entry for the purpose of conducting an inspection and inventory of the property shall not be considered a seizure under this subsection.

The entitlement to a hearing also has been subsumed in the statute along with *Good*'s essential holdings. Section 985(d) reads as follows:

(d)(1) Real property may be seized prior to the entry of an order of forfeiture if--

(A) the Government notifies the court that it intends to seize the property before trial; and
(B) the court –
      (i) issues a notice of application for warrant, causes the notice to be served on the property owner and posted on the property, and conducts a hearing in which the property owner has a meaningful opportunity to be heard; or

-9-

(ii) makes an ex parte determination that there is probable cause for the forfeiture and that there are exigent circumstances that permit the Government to seize the property without prior notice and an opportunity for the property owner to be heard.

(2) For purposes of paragraph (1)(B)(ii), to establish exigent circumstances, the Government shall show that less restrictive measures such as a lis pendens, restraining order, or bond would not suffice to protect the Government's interests in preventing the sale, destruction, or continued unlawful use of the real property.

As both *Good* and CAFRA explain, the purpose of requiring the government to use less restrictive means is so that the claimant is not foreclosed from use of his property during the pendency of civil forfeiture action. The *Good* Court reasoned:

Good's right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance. The seizure deprived Good of valuable rights of ownership, including the right of sale, the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents. All that the seizure left him, by the Government's own submission, was the right to bring a claim for the return of title at some unscheduled future hearing.
. . .

The seizure of a home produces a far greater deprivation than the loss of furniture, or even attachment. It gives the Government not only the right to prohibit sale, but also the right to evict occupants, to modify the property, to condition occupancy, to receive rents, and to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property.

*Good*, 510 U.S. at 53-54.

The Sixth Circuit has found that a violation of *Good* does not mean the property is no longer subject to forfeiture. However, a violation of *Good* can give rise to a finding of liability on the government's part:

The majority of circuits that have addressed this issue, however, have held that a Good violation does not invalidate forfeiture; instead, the government must pay the claimant any damages, such as lost profits or rents, that accrued during the period of the illegal seizure.
. . .

-10-

> We also are persuaded by the approach of the majority of circuits. Where, as in O'Brien's case, the government fails to provide pre-deprivation notice and hearing, but the property is found to be subject to forfeiture after the process due has been afforded, the violation does not immunize the property from forfeiture. Rather, the government is responsible for rents and profits of which the claimant was deprived during the period of illegal seizure.

*United States v. Real Property Located at 1184 Drycreek Road, Granville, Ohio*, 174 F.3d 720 (6th Cir. 1999).

In this case, Gahagan never received a pre-seizure hearing as contemplated by *Good* and as now codified by CAFRA. In fact, this point is conceded by the government as is the observation that the Parcels C-1, D-1, and D-3 remained under seizure for the past twenty years. Further, Parcel E was only released in 1999. As noted, Gahagan contends that the government prevented access to the property and his property rights therefore were deprived, even if temporally with respect to Parcel E, by the government during the pendency of the forfeiture action. The Court therefore believes that an evidentiary hearing is necessary to examine Gahagan's factual assertions.

The situation with respect to Parcel E during the time the government held the property and the twenty years of seizure of Parcel D-3, on which Gahagan prevailed as an innocent owner at trial, needs factual development. With respect to Parcel E, there is correspondence from an oil drilling company directly to the government, in which the company, Energy Quest Inc, requests the government to "reconsider the USA's position on this matter [allowing the company to extract natural resources]. A conservative estimate of revenue for the royalty interest is $17,000 annually." Clamaint's Mot. Tax Relief Ex. C, Letter (Mar. 25, 1993). On January 6, 1995, an attorney retained by Gahagan urged the government to allow interested energy companies to drill before the resources were depleted. Attorney Gretchen Kuhn wrote:

-11-

I am aware of the ownership dispute occurring over these lands.  Although there are certain aspects of this particular situation which fall outside the ususal realm of oil and gas matters, I feel there are certain steps to be taken here which are logical and potentially beneficial to the parties.

I realize that you have been approached previously with regard to the matter of granting an oil and gas lease on the captioned lands, and you have argued against its execution.  However, I believe that you should reconsider your position.

I believe that execution of an oil an gas lease, enabling drilling on the captioned lands is advisable (or other steps to assure that drilling is initiated).  There is significant evidence that drainage is occurring from the wells located off the captioned lands.  Such drainage would radically decrease the oil and gas recoverable from the captioned lands, and, thus result in damage to the mineral owners.  Once drainage occurs, it cannot be undone, and the hydrocarbons cannot be replaced. Wells located near the lands already have been producing for several years.  In order to eliminate any possible further drainage, drilling would on the captioned lands should be initiate at as early a time as possible.  Execution of an appropriate oil and gas lease or other similar agreement to a firm qualified to act promptly on this matter and acceptable to all partes to the dispute, is recommended.

*Id.*  Letter (Jan 5, 1995).

Thus, at this point, there are disputed issues of fact as to the degree of control Gahagan was permitted to exercise over his property rights during the pendency of this forfeiture action.  The Court therefore will take testimony from the parties at the evidentiary hearing to resolve Gahagan's motion for relief from property tax and damages.  The claimant will have the opportunity to present testimony and evidence as to his allegations that the government intervened and refused to permit the extraction of natural resources, and that he suffered identifiable damages as a consequence. Further, Gahagan will have the opportunity to present testimony and evidence that the government foreclosed him from any economic use of Parcel D-3.  The government will be allowed to present rebuttal evidence including testimony on the efforts it took to secure the property and permit Gahagan use of Parcel D-3, testimony and evidence on its statute of limitations argument with respect to Parcel E, and testimony and evidence that any trespass on the property gives rise to a

claim against the responsible energy companies and not it.

B. *Claimant's Petition Pursuant to the Excessive Fines Clause of the Eighth Amendment*

Gahagan next argues that the government cannot justify the forfeiture of parcels in this case because exacting that toll is grossly disproportionate to the nature of the crimes committed on the property or purchased with the proceeds of any such criminal activity. In other words, civil forfeiture as a result of the jury's verdict would violate the Excessive Fines Clause of the Eighth Amendment.

The excessiveness inquiry in a civil forfeiture action is both constitutional and statutory. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In *United States v. Bajakajian*, 524 U.S. 321, 327-28 (1998) the Supreme Court explained that "the word fine [is] understood to mean a payment to a sovereign as punishment for some offense." As a result, the Excessive Fines Clause has been read to "limit[] the government's power to extract payments, whether in cash or in kind, as punishment for some offense. Further, forfeitures-payments in kind-are thus 'fines' if they constitute punishment for an offense." *Id.* at 328 (internal citations and quotations omitted).

To be sure, *Bajakajian* dealt with criminal forfeiture, where the "statute direct[ed] a court to order forfeiture as an additional sanction when 'imposing sentence on a person convicted of' a willful violation of § 5316's reporting requirement. The forfeiture is thus imposed at the culmination of a criminal proceeding and requires conviction of an underlying felony, and it cannot be imposed upon an innocent owner of unreported currency, but only upon a person who has himself been convicted of a § 5316 reporting." *Ibid.* However, the Court addressed in a footnote the argument that civil *in rem* actions are purely remedial and directed at a "guilty" property as distinct from the

-13-

individual convicted of criminal wrongdoing, and therefore beyond the purview of the Eighth

Amendment.  The Court wrote:

> It does not follow, of course, that all modern civil in rem forfeitures are nonpunitive
> and thus beyond the coverage of the Excessive Fines Clause. Because some recent
> federal forfeiture laws have blurred the traditional distinction between civil *in rem*
> and criminal *in personam forfeiture*, we have held that a modern statutory forfeiture
> is a "fine" for Eighth Amendment purposes if it constitutes punishment even in part,
> regardless of whether the proceeding is styled *in rem* or *in personam*. *See Austin v.*
> *United States, supra*, at 621-622 (although labeled in rem, civil forfeiture of real
> property used "to facilitate" the commission of drug crimes was punitive in part and
> thus subject to review under the Excessive Fines Clause).

*Id.* at 331 n. 6.

In enacting CAFRA, Congress sought to clarify the lines the Supreme Court found to be

blurred in civil forfeiture actions.  Indeed, 18 U.S.C. § 983(g) codifies the protection afforded by

the Eighth Amendment in civil proceedings:

> (g) Proportionality.–
> (1)     The claimant under subsection (a)(4) may petition the court to determine
>           whether the forfeiture was constitutionally excessive.
> (2)     In making this determination, the court shall compare the forfeiture to the
>           gravity of the offense giving rise to the forfeiture.
> (3)     The claimant shall have the burden of establishing that the forfeiture is
>           grossly disproportional by a preponderance of the evidence at a hearing
>           conducted by the court without a jury.
> (4)     If the court finds that the forfeiture is grossly disproportional to the offense
>           it shall reduce or eliminate the forfeiture as necessary to avoid a violation of
>           the Excessive Fines Clause of the Eighth Amendment of the Constitution

Noticeably absent from the statute is any meaningful direction on how to determine whether a

forfeiture is grossly disproportional.

Gahagan argues that "the majority of courts agree that the fine range under the sentencing

guidelines is the single most important, and most readily utilized criterion in a proportionality

inquiry." Claimant's Petition 8th Amend. at 2. Although the claimant believes that range of fines

-14-

is the key to the inquiry, he maintains that "the majority of circuits have rejected any comparison with the statutory maximum fines available under federal law." *Ibid.* Indeed, the "courts now compare the forfeiture with the range of fines that *could have legally been imposed on the claimant under the U.S. Sentencing Guidelines*." *Id.* at 3 (emphasis added).

The government argues that in assessing the gravity of the offense in this case, the Court need only look to the record. According to he government, the record demonstrates that Michael Gahagan and Gahagan were able to purchase the property at issue, finance the construction of a four-car garage, and partially construct a larger house on Parcel D-1 primarily with proceeds from illegal drug activity.

The Court agrees. As a starting point, the jury was asked specifically to determine what amount of each parcel at issue derived from legitimate income. The special verdict form reads as follows:

<u>SPECIAL VERDICT FORM</u>

We, the jury, return the following Special Verdict as to the following property:

1.    Was the real property and premises known as Parcel C-1 used or intended to be used, in any manner or part, to commit or to facilitate the commission of a felony drug offense?

YES    _____X_____            NO    _____

2.    Was the real property and premises known as Parcel C-1 derived from proceeds, directly or indirectly, obtained in exchange for controlled substances?

YES    _____X_____            NO    _____

If you answered yes to question 2, what percentage of Parcel C-1, if any, was derived from legitimate income: _____10_____
(If none, write "none")

3.    Was claimant Daniel Gahagan an innocent owner of the real property

-15-

and premises known as Parcel C-1?

        YES  _____          NO  ____X____

      4.     Was the real property and premises known as Parcel D-1 used or intended to be used, in any manner or part, to commit or to facilitate the commission of a felony drug offense?

        YES  ____X____          NO  _____

      5.     Was the real property and premises known as Parcel D-1 derived from proceeds, directly or indirectly, obtained in exchange for controlled substances?

    YES  ____X____         NO  _____

              If you answered yes to question 5, what percentage of Parcel D-1, if any, was derived from legitimate income: ____10____
                   (If none, write "none")

      6.     Was claimant Daniel Gahagan an innocent owner of the real property and premises known as Parcel D-1?

        YES  _____          NO  ____X____

      7.     Was the real property and premises known as Parcel D-3 derived from proceeds, directly or indirectly, obtained in exchange for controlled substances?

        YES  ____X____          NO  _____

              If you answered yes to question 7, what percentage of Parcel D-3, if any, was derived from legitimate income: ____10____
                   (If none, write "none")

      8.     Was claimant Daniel Gahagan an innocent owner of the real property and premises known as Parcel D-3?

        YES  ____X____          NO  _____

Dkt # 799, Special Verdict Form (Nov. 1, 2006).

     The jury was satisfied that illegal drug offenses enabled ninety percent of the parcels at issue to be purchased, improved, or benefitted in some manner. As the government points out, based on

the jury's findings, there is a near perfect correlation between the illegal activity and the benefit that

inured to the Parcels C-1, D-1, and D-3.  Plainly, the fact that ten percent of the parcels was derived

from legitimate income, is not "grossly disproportional" as contemplated by the Eighth Amendment

and CAFRA.

The problem with Gahagan's reference to the sentencing guidelines is that fact he was

sentenced before the guidelines went into effect.  As a result, it is difficult to establish what the

appropriate range would have been.  Nonetheless, the claimant reasons:

> In this instance the forfeiture of the SEV valued property ($446,800) was 446,800
> times the amount of their [Michael and Daniel Gahagan's] fine, and was over 400
> times the amount the amount of the value of the seized drugs.  According to the
> Sentencing Guidelines § 2D1.1(17) claimant would fall at the lower end of "at least
> 200 G but less than 500 G of Hashish " level 9-10.  Level 9 has a minimum fine of
> $1,000 and maximum of $10,000.  Level 10 has a minimum fine of $2,000 and a
> maximum of $20,000.  Under the Eight Amendment's Excessive Fines Clause, the
> disparity between the monetary value of the property and the possible fines, and the
> guide line range and the forfeiture penalty is clearly disproportionate.

*Id.* at 5.

However, as the government points out, evidence at trial suggested that Gahagan had

conspired with others in committing drug offenses that dated back to 1971 and continued until at

least September, 1986.  As the jury verdict demonstrates, Daniel and Michael Gahagan were able

to purchase and improve the parcels at issue with funds, ninety percent of which were derived from

proceeds in exchange for controlled substances.  In fact, in an earlier responsive motion, Michael

and Daniel Gahagan stated that they were engaged in the business of marijuana manufacturing and

trafficking.  *See* Dkt # 368, Exs. A, B.  Apparently, income from their illicit activities was such that

they were able to live off those in earnings beyond 1974.  *Ibid.*

The point is well taken.  In order to compute the applicable guideline range, the Court would

-17-

have to convert the drug proceeds used to purchase and improve the parcels as well support Michael Gahagan and Gahagan after 1974 into specific drug quantities to determine a base offense score. Further, Gahagan assumes that only his offense of conviction would be utilized in determining his guideline score. *See, e.g.,* USSG § 1B1.3 (directing the Court to look to other relevant conduct in assessing a guideline score). The government points out that a complex calculation in this case is not necessary because the lowest penalty provision that possibly could apply to this case is found in 21 U.S.C. § 841(b)(1)(B), which applies to offenses involving 100 kilograms of marijuana or 100 marijuana plants to less than 1,000 kilograms of marijuana or 1,000 marijuana plants.

For that amount, a reasonable conversion of drug quantities that would support the purchase or improvement of 90 percent of the parcels and Michael Gahagan and Gahagan's lifestyle, the statutory guideline fine maximum is $2,000,000. *See* USSG § 5E1.2(4)(A). Further, as the government notes, the fines found in tables of the guidelines would not be applicable because the statute of conviction provides for a maximum fine in excess of $250,000. Similarly, it is not inappropriate for the Court to consider the statutory maximum fine and the guideline range. *See United States v. Ely,* 468 F.3d 399 (6th Cir. 2006) (considering the guideline fine range and the statutory maximum in assessing proportionality in a criminal forfeiture case akin to *Bajakajian*); *United States v. Six Negotiable Checks in Various Denominations Totalling $191,671.69*, 389 F. Supp. 2d. 813 (E.D. Mich. 2005).

In light of the jury's verdict, the difficulty and complexity of calculating guideline ranges in this case, and the evidence presented a trial, the Court concludes that the jury's finding of forfeiture in this case does violate the Excessive Fines Clause of the Eighth Amendment or CAFRA.

C. *Motion for Entry of Judgment as to the Claims of Michael Gahagan*

-18-

During oral argument, Gahagan conceded that his brother Michael Gahagan was no longer a party in interest to this case and participated at trial only as a witness. The government seeks entry of a judgment against Michael Gahagan's ownership interest in Parcel D-3 because he defaulted any *in personam* innocent ownership defense.

The dispute stems largely from Michael Gahagan's lack of meaningful participation in this case in pretrial proceedings and the fact that he conveyed his interest in the parcel(s) at issue to his brother Daniel. During oral argument on other matters on October 10, 2006, the Court observed that Michael Gahagan had not participated in the pretrial proceedings; that is, defaulting in his compliance with the pretrial preparation requirements. An order summarizing the Court's observations issued. It reads, in relevant part:

> The Court also discussed on the record with counsel for the government and claimant Daniel Gahagan, Michael Gahagan's continued participation in the action as a claimant. Daniel Gahagan represented that Michael Gahagan has sold his interest in the defendant property to Daniel Gahagan and no longer has standing to contest matters in the litigation. After hearing argument from the government and claimant Daniel Gahagan and considering the recent record of Michael Gahagan's lack of participation in the case, the Court entered default judgment against claimant Michael Gahagan as a result of his lack of appearance and participation in the pretrial hearings. Michael Gahagan, however, may elect to contest the Court's ruling by appearing at trial, scheduled for October 24, 2006 at 8:30 a.m., and requesting appropriate relief.

Dkt # 788, Order (Oct. 16, 2006). Daniel Gahagan's representation at the hearing was the first time any mention was made that Michael Gahagan had conveyed his joint tenancy interest to Daniel.

On October 16, 2007, Michael Gahagan, by way of a motion filed by Gahagan to withdraw as a claimant, represented that he and Daniel had recorded a quit claim deed in Otsego County on April 24, 2004. Michael Gahagan sought to withdraw because he no longer had any interest against which to defend by virtue of the transfer of his joint tenancy interest in Parcel D to his brother.

-19-

The issue, at this juncture, concerns only parcel D-3, on which Gahagan prevailed as an innocent owner.  The jury made no finding that Gahagan was an innocent owner of Parcels C-1 and D-1, and further found that there was a substantial connection between criminal activity and those parcels and that those parcels were directly or indirectly derived from illegal activity.

The somewhat novel question confronting the Court then is whether Michael Gahagan's conveyance of his joint tenancy interest with full rights to survivorship to Gahagan sometime in 2004, without notice to the Court or the government, permits Gahagan to obtain Michael's joint tenancy interest subject only to Michael Gahagan's innocent ownership defense. The government maintains that an innocent ownership defense, as a matter of law, cannot be transferred together with a conveyance of property.  Although civil forfeitures of real property are actions *in rem*, the defense of innocent ownership decidedly is *in personam*.  In fact, the government believes that any conveyance constitutes a waiver of the defenses.

Both parties agree that they cannot identify case law supporting either proposition. CAFRA, by its plain terms prohibits a later purchaser from successfully asserting his or her own independent innocent ownership defense, but it does not appear to preclude the conveyance of real property along with the transferor's defense.  That is simply to say that the transferee can receive no better right to the parcel as an innocent owner, but there is nothing in the statute that suggests that the transferee's rights must be less that the rights of the transferor.  The statute provides, in relevant part:

(d) Innocent owner defense.–
(1) An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.

(2)(A) With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term "innocent owner" means an owner who--
(i) did not know of the conduct giving rise to forfeiture; or

-20-

(ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property.

(B)(i) For the purposes of this paragraph, ways in which a person may show that such person did all that reasonably could be expected may include demonstrating that such person, to the extent permitted by law--

(I) gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and

(II) in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property.

(ii) A person is not required by this subparagraph to take steps that the person reasonably believes would be likely to subject any person (other than the person whose conduct gave rise to the forfeiture) to physical danger.

(3)(A) With respect to a property interest acquired after the conduct giving rise to the forfeiture has taken place, the term "innocent owner" means a person who, at the time that person acquired the interest in the property--

(i) was a bona fide purchaser or seller for value (including a purchaser or seller of goods or services for value); and

(ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture.

(B) An otherwise valid claim under subparagraph (A) shall not be denied on the ground that the claimant gave nothing of value in exchange for the property if--

(i) the property is the primary residence of the claimant;

(ii) depriving the claimant of the property would deprive the claimant of the means to maintain reasonable shelter in the community for the claimant and all dependents residing with the claimant;

(iii) the property is not, and is not traceable to, the proceeds of any criminal offense; and

(iv) the claimant acquired his or her interest in the property through marriage, divorce, or legal separation, or the claimant was the spouse or legal dependent of a person whose death resulted in the transfer of the property to the claimant through inheritance or probate,

except that the court shall limit the value of any real property interest for which innocent ownership is recognized under this subparagraph to the value necessary to maintain reasonable shelter in the community for such claimant and all dependents residing with the claimant.

(4) Notwithstanding any provision of this subsection, no person may assert an ownership interest under this subsection in contraband or other property that it is illegal to possess.

(5) If the court determines, in accordance with this section, that an innocent owner has a partial interest in property otherwise subject to forfeiture, or a joint tenancy or tenancy by the entirety in such property, the court may enter an appropriate order--

(A) severing the property;

(B) transferring the property to the Government with a provision that the Government compensate the innocent owner to the extent of his or her ownership interest once a final order of forfeiture has been entered and the property has been reduced to liquid assets; or

(C) permitting the innocent owner to retain the property subject to a lien in favor of the Government to the extent of the forfeitable interest in the property.

(6) In this subsection, the term "owner" –

(A) means a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and

(B) does not include–
(i) a person with only a general unsecured interest in, or claim against, the property or estate of another;
(ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or
(iii) a nominee who exercises no dominion or control over the property

18 U.S.C. § 983(d).

Thus, CAFRA sets forth the elements that an innocent owner would have to prove in order to prevail on his or her defense. The title of the conveying party is only as good as the interest he or she actually holds in that property subject only to his or her innocent ownership defense. Therefore, Gahagan could legitimately have acquired Michael Gahagan's joint tenancy interest in Parcel D-3 subject to Michael Gahagan's innocent owner defense.

Although theoretically this result might obtain, Michael Gahagan and Gahagan never put the Court or the government on notice that a conveyance had occurred and that the government would have to defend against both Gahagan's and Michael Gahagan's innocent owner defense by way of Gahagan's proofs at trial.  Federal Rule of Civil Procedure 25 provides the mechanism for substitution of parties.  It states, in relevant part:

> (c) Transfer of Interest. In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party. Service of the motion shall be made as provided in subdivision (a) of this rule.

Fed. R. Civ. P. 25(c).

Neither Gahagan brother filed a motion with this Court to indicate that a transfer of interest had occurred.  Moreover, since 2004, Michael Gahagan failed to participate in the proceedings in any meaningful way.  Indeed, Michael Gahagan was placed on notice by this Court's October 16, 2006 order that his claims were subject to default. In fact, it was only after oral argument on October 10, 2006 that Michael Gahagan attempted to withdraw as a claimant.

Michael Gahagan failed to appear before this Court at the appointed date, and the government moved for an entry of judgment.  In fact, it was not until the third day of trial that Michael Gahagan arrived at the Court.  Even then, his role was limited to serving as a fact witness in support of Gahagan's claims.  In light of Michael Gahagan's lack of participation in this case, the Gahagan brother's failure to place the Court and the government on notice that a transfer of interest had occurred in accordance with the Federal Rules of Civil Procedure, and Michael Gahagan's failure to comply with the Court's order, the Court believes that the government is entitled to judgment against any potential claims Michael Gahagan may have had including any defense of

-23-

innocent ownership with respect to Parcel D-3 asserted by his brother.

Even assuming that the Court and the government were placed on notice and Michael Gahagan had complied with the Court's directive, the jury verdict suggests that Gahagan ultimately would have been unsuccessful in proving his brother's innocent ownership of Parcel D-3. The jury was posed the following questions on the special verdict form:

> 7.    Was the real property and premises known as Parcel D-3 derived from proceeds, directly or indirectly, obtained in exchange for controlled substances?
>
> YES     X            NO     _____
>
> If you answered yes to question 7, what percentage of Parcel D-3, if any, was derived from legitimate income:     10
> (If none, write "none")
>
> 8.    Was claimant Daniel Gahagan an innocent owner of the real property and premises known as Parcel D-3?
>
> YES     X            NO     _____

Dkt # 799, Special Verdict Form (Nov. 1, 2006).

Thus, it stands to reason that because Gahagan was found to be an innocent owner of Parcel D-3, but only ten percent of that parcel was derived from legitimate income, it was Michael Gahagan's conduct that gave rise to the finding by the jury that the property otherwise was subject to forfeiture. Judgment in the government's favor, therefore, is appropriate even presuming the propriety of a transfer of Michael Gahagan's interest to Gahagan. As a consequence, the government has assumed Michael Gahagan's interest in Parcel D-3 and stands as a joint tenant with rights of survivorship together with Daniel Gahagan with all rights and responsibilities that follow.

-24-

### D.  *Motion for Attorneys Fees*

Gahagan on behalf of his deceased mother and as purported executor of her estate has made a motion for attorney fees. He contends that his mother expended some $14,000 in defending her role in this action. Her attorney at the time, Niel Wackerly, withdrew from this action on May 22, 2006.

CAFRA permits the award of attorney fees to claimants that substantially prevail in their cases:

> (a) Upon the entry of a judgment for the claimant in any proceeding to condemn or forfeit property seized or arrested under any provision of Federal law–
>
> (1) such property shall be returned forthwith to the claimant or his agent; and
> (2) if it appears that there was reasonable cause for the seizure or arrest, the court shall cause a proper certificate thereof to be entered and, in such case, neither the person who made the seizure or arrest nor the prosecutor shall be liable to suit or judgment on account of such suit or prosecution, nor shall the claimant be entitled to costs, except as provided in subsection (b).
>
> (b)(1) Except as provided in paragraph (2), in any civil proceeding to forfeit property under any provision of Federal law in which the claimant substantially prevails, the United States shall be liable for–
>
> (A) reasonable attorney fees and other litigation costs reasonably incurred by the claimant;
> (B) post-judgment interest, as set forth in section 1961 of this title; and
> (C) in cases involving currency, other negotiable instruments, or the proceeds of an interlocutory sale–
> (i) interest actually paid to the United States from the date of seizure or arrest of the property that resulted from the investment of the property in an interest-bearing account or instrument; and
> (ii) an imputed amount of interest that such currency, instruments, or proceeds would have earned at the rate applicable to the 30-day Treasury Bill, for any period during which no interest was paid (not including any period when the property reasonably was in use as evidence in an official proceeding or in conducting scientific tests for the purpose of collecting evidence), commencing 15 days after the property was seized by a Federal law enforcement agency, or was turned over to a Federal law enforcement agency by a State or local law enforcement agency.

(2)(A) The United States shall not be required to disgorge the value of any intangible benefits nor make any other payments to the claimant not specifically authorized by this subsection.

(B) The provisions of paragraph (1) shall not apply if the claimant is convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

(C) If there are multiple claims to the same property, the United States shall not be liable for costs and attorneys fees associated with any such claim if the United States–

(i) promptly recognizes such claim;

(ii) promptly returns the interest of the claimant in the property to the claimant, if the property can be divided without difficulty and there are no competing claims to that portion of the property;

(iii) does not cause the claimant to incur additional, reasonable costs or fees; and

(iv) prevails in obtaining forfeiture with respect to one or more of the other claims.

(D) If the court enters judgment in part for the claimant and in part for the Government, the court shall reduce the award of costs and attorney fees accordingly.

28 U.S.C. § 2464.

As Gahagan points out, the attorney fees provisions of CAFRA have been read by at least one court to be broader than the relief available for obtaining an award of fees under the Equal Access to Justice Act. In *United States v. $60,201.00 in United States Currency*, 291 F. Supp. 2d 1126, 1130 (C.D. Cal. 2003), the court commented:

Until CAFRA was passed, claimants routinely proceeded under the EAJA to request an award of attorney fees. If Congress had intended to maintain the status quo with regard to fee awards, it had the option of specifying that hourly rates should be capped, or, alternatively, omitting the attorney fee language from the Act entirely. A comparison of the CAFRA and EAJA provisions suggests that Congress intended to liberalize the award of attorney fees, rather than restrict them. For instance, the EAJA states that courts can award attorney fees to a "prevailing party," 28 U.S.C. § 2412(b). CAFRA, by contrast, broadens the class that can receive fees in forfeiture actions to claimants who "substantially prevail." 28 U.S.C. 2465(b).

There is sparse case law defining the phrase "substantially prevail" under the attorney fees provisions of CAFRA. Pre-CAFRA cases, however, provide some guidance. For example,

-26-

in *United States v. 163.25 Acres of Land, Graves County, Ky.*, 663 F. Supp. 1119, 1120 (W.D. Ky 1987), the court interpreted a prevailing party under the EAJA to mean as "one who has received substantially the relief requested or has been successful on the central issue." (citing *United States v. Certain Real Property Located at 4880 S.E. Dixie Highway*, 628 F. Supp. 1467, 1469 (S. D. Fla.1986).

The debate concerning what constitutes a claimant that substantially prevails under CAFRA, however, largely is academic in this case. First, Gahagan has not demonstrated that he can even bring a claim for attorneys fees on behalf of his mother's estate. Although he insists that he is the executor of her estate, he has advanced no evidence that he is the duly appointed executor of the estate or that her estate remains open more than three years after her death.

Second, Gahagan has defended his interest in this action *pro se*. Consequently, even assuming his legal status as executor of his mother's estate and that the estate remains open at the present time, he may not represent anyone's interest aside from his own.  *See, e.g., Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (prohibiting "plaintiffs [from] appear[ing] *pro se* where interests other than their own are at stake"). Although Gahagan is an attorney, his privilege to practice law in the Eastern District was suspended. There is no evidence that the claimant has sought to have his privilege to appear before this Court on behalf of others, including the estate of his deceased mother, restored. Gahagan's privilege to practice law in the Eastern District was suspended because of misconduct at earlier stages of litigation in this case.

Third, no motion was filed in this matter to substitute the estate of Agnes Gahagan as an appropriate party in interest. Thus, neither this Court nor the government were properly given

notice under the Federal Rules of Civil Procedure that any claims Agnes Gahagan may have survived here death.  Indeed, Federal Rule of Civil Procedure 25(a) provides:

> (a) Death.
>
> (1) If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of a summons, and may be served in any judicial district. Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

There is no evidence that Gahagan made the appropriate motion to substitute as a representative of his late mother's estate.

Perhaps most fatal to Gahagan's claim for fees is the fact that the attorney fees provisions of CAFRA contemplate the entry of judgment in the claimant's favor before an award of fees may be granted. That provision reads, in relevant part:

> (a) *Upon the entry of a judgment for the claimant* in any proceeding to condemn or forfeit property seized or arrested under any provision of Federal law--
>
> (1) such property shall be returned forthwith to the claimant or his agent; and
> (2) if it appears that there was reasonable cause for the seizure or arrest, the court shall cause a proper certificate thereof to be entered and, in such case, neither the person who made the seizure or arrest nor the prosecutor shall be liable to suit or judgment on account of such suit or prosecution, nor shall the claimant be entitled to costs, except as provided in subsection (b).

28 U.S.C. § 2465(a)(1)-(2) (emphasis added). No judgment has entered on Agnes Gahagan's behalf. The Court sees no legal basis for entering such a judgment in light of the fact that she is now deceased and there is no evidence that claims she may have had survive in any manner after her passing.

Finally, even assuming that Gahagan is properly representing his mother's estate, there is little evidence that she substantially prevailed with respect to her claims. Gahagan's argument appears largely premised on Judge Churchill's finding that the government lacked probable cause to dispute Agnes Gahagan's claim as an innocent owner with respect to Parcel E-1 and therefore was a prevailing party. *See* Dkt # 403, Memorandum Op. The government does not contest that it did not prevail with respect to this claim.

Gahagan further reads Judge Churchill's opinion to suggest that his mother substantially prevailed with respect to Parcels A, B, AB, C-2, D-2, and E-2. However, the comments of Judge Churchill were speculative and plainly *dicta*. He reasoned that the attempt to forfeit profits from those parcels deprived the court of jurisdiction, and the government's actions apparently were "not consistent with the nature of an *in rem* proceeding."   Further, he stated that "[i]t is the Court's opinion that the Government cannot have forfeiture of interests beyond the scope of the prayer for relief in the first amended complaint but, even if it could, the Court *would* grant her summary judgment on this issue because there is nothing in the record to rebut her affidavit of innocent ownership." Gahagan also draws on Judge Churchill's comments that no leave would be granted to amend with respect to the remaining parcels as evidence that his mother substantially prevailed.

Although Agnes Gahagan prevailed with respect to one parcel, it is unclear that she substantially prevailed on her claims. As the government points out, a proceeds theory was not available to it at the time the complaint was filed. However, as has been made clear throughout the course of this litigation and during trial, the government under CAFRA may proceed under a proceeds theory. *See* 21 U.S.C. 881(a)(6). Further, at the time the complaint was filed, Agnes

Gahagan had no ownership interest in A, B, AB, C-2, D-1, D-3, E-1, and E-2. In fact, she had only a joint tenancy in Parcel C-1 with Gahagan and a mortgage that attached to portions of Parcels D-1 and E-1. In the case of Parcel C-1, the jury found that parcel was subject to forfeiture on both proceeds and facilitation theories. Finally, although Gahagan makes light of this fact, the government did prevail on its claim that Agnes Gahagan's mortgage interest did not preclude the forfeiture of parcel D-1 and the taking of good title by the government of that parcel.

The Court therefore believes that when viewed against the entire back drop of this litigation, Agnes Gahagan did not substantially prevail with respect to her claims. Although she did prevail with respect to Parcel E-1, the government equally prevailed with respect to Parcel D-1. In addition, there is no evidence of any ownership interest by Agnes Gahagan in Parcels A, B, AB, C-2, D-2, and E-2. Finally, with respect to what ownership interests Agnes Gahagan might plausibly have had, the jury found that parcels C-1 and D-1 were subject to forfeiture by the government.

Even assuming Agnes Gahagan substantially prevailed, Gahagan has not demonstrated that he can represent her interests in this case. He has not demonstrated that he is the duly appointed executor of her estate or that her estate even remains open as of this date. Moreover, Gahagan's privilege to practice law in this District has been revoked and he has been acting *pro se*, and therefore may represent only his own interests in this matter because of prior misconduct in this litigation. Finally, Gahagan never made an appropriate motion under the Federal Rules of Civil Procedure for substitution that would put this Court and the government on notice that he had the legal authority to pursue his mother's claim. Nor has any judgment been entered in favor

-30-

of Agnes Gahagan, a prerequisite to obtaining attorney fees in the first instance. The Court therefore will deny the motion for attorneys fees under CAFRA.

### E. *Motion for Judgment as a Matter of Law*

Finally, Daniel Gahagan has moved for entry of judgment as a matter of law under Rule 50(b). Gahagan raises primarily the same litany of complaints he has throughout the entire litigation. For instance, he claims that as a matter of law, the jury could not find that Parcel C-1 was used to facilitate illegal drug activity because it was used merely as a means of access between two other parcels of property. The claims are not worth reciting in any detail because Gahagan's motion plainly is untimely under the Federal Rules.

Federal Rule of Civil Procedure 50 states, in relevant part:

> (b) Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under subdivision (a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after the entry of judgment or -- if the motion addresses a jury issue not decided by a verdict -- no later than 10 days after the jury was discharged. The movant may alternatively request a new trial or join a motion for a new trial under Rule 59.

Fed. R. Civ. P. 50(b). The motion is untimely in the first instance because it was filed over ten days after the jury's verdict was entered. The jury rendered its verdict on November 1, 2006, and the claimant filed this motion on November 20, 2006, some nineteen days post verdict.

Second, even if it were timely, Gahagan admits he never made a motion for judgment as a matter of law under subsection (a), which provides that "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify

-31-

the judgment sought and the law and facts that entitle the movant to the judgment." Fed. R. Civ. P. 50(a)(2).

In order to get around the plain language of the Rule, Gahagan argues that in effect the Court on its own motion brought up the issue of judgment as a matter of law. He cites to *Federal Deposit Ins. Corp v. Dixon*, 791 F.2d 932 (6th Cir. 1986) (unpublished) (table), for the proposition that the as long as the issue is raised and discussed before the case is submitted to the jury, Rule 50(a) and (b) are satisfied. To be sure, that case does stand for the proposition that no formal motion need be filed that invokes the magic words "judgment as a matter of law." In fact, it is sufficient if the court in an effort to efficiently address what surely will be a request for judgment as a matter of law, solicits the parties' arguments on the issue instead of requiring them to file a formal motion.

In this case, Gahagan claims that the court raised the issue of judgment as a matter of law and actually ruled that there was no viable facilitation theory with respect to Parcel D-3. He then claims that the government, although it did not initially challenge the ruling, raised the issue again by arguing to the Court that the government need only prove an intent to facilitate.

Gahagan misreads both the scope of the Court's decision and its intent. When the Court raised the issue of facilitation on D-3, it did so in conjunction with the preparation of jury instructions. Ultimately, the government agreed that there was no viable facilitation theory with respect to D-3, and the verdict form reflects this agreement.

In the end, Gahagan did not make a timely motion for judgment as a matter of law, filed his motion nineteen days after the jury rendered its verdict, and now attempts to argue issues beyond the parties' agreement on the jury instructions that there was no viable facilitation theory

-32-

as to Parcel D-3. The Court therefore will deny Gahagan's motion for judgment as a matter of law.

III.

After reviewing the parties' submissions and hearing oral argument, the Court believes that claimant Daniel Gahagan's petition pursuant to the Eighth Amendment's Excessive Fines Clause, his motion for attorney fees on behalf of the estate of his deceased mother, and his motion for judgment as a matter of law lack merit. The Court also concludes that the government is entitled to a judgment on the claims of Michael Gahagan and that an evidentiary hearing is necessary to resolve outstanding factual disputes with respect to Daniel Gahagan's motion for property tax relief and damages.

Accordingly, it is **ORDERED** that the claimant's petition pursuant to the Excessive Fines Clause of the Eighth Amendment [dkt # 803], his motion for attorney's fees on behalf of his mother's estate [dkt # 810], and his motion for judgment as a matter of law [dkt # 801] are **DENIED**.

It is further **ORDERED** that the government's request for entry of judgment as to the claims of Michael Gahagan [dkt # 798] is **GRANTED**.

It is further **ORDERED** that the parties appear on **Monday, May 14, 2007 at 9:30 a.m.** for an evidentiary hearing with respect to the claimant's motion for property tax relief and damages.

It is further **ORDERED** that a status conference is scheduled for **April 5, 2007 at 11:00 a.m.** On or before **March 30, 2007**, the parties are to exchange proposed witness lists for the evidentiary hearing including a summary of anticipated testimony of each witness. Gahagan

-33-

shall also provide the government and Court with a brief not to exceed ten pages containing an itemization of his alleged damages and summary of his argument by **March 30, 2007**.  The government is equivalently directed to file a brief not to exceed ten pages describing the factual and legal basis for its defense by **March 30, 2007**.

It is further **ORDERED** that the government's motion for an order to show cause [dkt # 791], the claimant's motion for sanctions [dkt # 779], the claimant's motion for reconsideration [dkt # 793]; the claimant's motion to strike the government's supplemental brief [dkt # 817]; and the claimant's motion to strike the government's motion for removal of property [dkt # 821] are **DENIED** as moot.

It is further **ORDERED** that the government prepare a draft form of judgment of forfeiture consistent with this opinion, including the relevant legal descriptions of the property in recordable form.  The government shall provide Gahagan with a draft of such judgment on or before **March 30, 2007**.  Thereafter, the parties are directed to meet and confer to identify objections to the proposed judgement.  The Court will consider the proposed judgment and any objections thereto at the status conference on **April 5, 2007 at 11:00 a.m.**

It is further **ORDERED** that the parties meet and confer to discuss eventual removal of Gahagan's property from the forfeited parcels.  The parties shall present at the status conference on **April 5, 2007** a time line for the removal of such property.

It is further **ORDERED** that the government's motion for removal of property [dkt # 818] is **DENIED WITHOUT PREJUDICE**.  The government may renew its motion if it is

-34-

unsuccessful in soliciting a mutually agreeable time line after meeting and conferring with

Gahagan.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 8, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 8, 2007.

s/Tracy A. Jacobs
TRACY A. JACOBS

---



EXHIBIT 1