UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

        Case Number 87-10338-BC
        Honorable Thomas L. Ludington

REAL PROPERTY IN SECTION 9,
TOWN 29 NORTH, RANGE 1 WEST,
TOWNSHIP OF CHARLTON,
OTSEGO COUNTY, MICHIGAN,

        Defendant,

DANIEL S. GAHAGAN,

        Claimant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CLAIMANT'S MOTION FOR CLARIFICATION OF JUDGMENT AND DIRECTING THE GOVERNMENT TO PAY CLAIMANT HIS SHARE OF THE PROCEEDS FROM THE SALE OF PARCEL D-3**

On September 12, 1986, agents from the federal Drug Enforcement Administration ("DEA") searched the property at issue in this case and discovered 840 grams of marijuana, 311 grams of hashish, $4,000 in U.S. currency, scales and other supplies associated with the distribution of controlled substances, and several firearms. *See United States v. Gahagan*, 865 F.2d 1690, 1493 (6th Cir. 1989). Claimant Daniel S. Gahagan, his brother, Michael Gahagan, and Susan Soper were indicted in federal court on several charges of possession with intent to distribute controlled substances. *Id.* at 1491. Claimant Daniel Gahagan eventually pleaded guilty to one count of possession with intent to distribute hashish and was sentenced to two-years in prison and two years of supervised release. *See Gahagan v. United States*, 979 F.2d 850 (6th Cir. 1992) (unpublished

1

table decision).

On November 12, 1987, the government filed this case, seeking civil forfeiture of the real property where the search was executed and several items of personal property that were discovered there during the search. The government argued that forfeiture was appropriate because the property was used to facilitate the commission of a felony drug offense and the property was derived from proceeds obtained in exchange for controlled substances. *See* 21 U.S.C. § 881(a)(6)–(7). A jury trial was conducted in late October 2006. On November 1, 2006, the jury returned a special verdict form finding that all three parcels of property at issue were subject to forfeiture because of their connection to drug trafficking, but that Claimant was an "innocent owner" of the parcel denominated "D-3." Accordingly, Claimant was entitled to retain his interest in that parcel. *See* 21 U.S.C. § 881(a)(6).

On August 10, 2007, the Court entered an amended judgment of forfeiture which provided in part:

> It is further **ORDERED AND ADJUDGED** that all right, title and interest of Michael Gahagan and all other parties other than Daniel Gahagan in the defendant real property more fully described above as Parcel D-3, including the mineral rights, are forfeited to the United States of America pursuant to 21 U.S.C. § 881(a)(6), and that the property will be held by the United States of America and Daniel Gahagan as joint tenants with rights of survivorship.
>
> It is further **ORDERED AND ADJUDGED** that the United States Marshall may sell, transfer or dispose of the defendant real property described above as Parcel D-3 (in a commercially reasonable manner, but without further order of the Court). Daniel Gahagan shall receive 50 percent of the proceeds of the sale after the payment of all expenses except that the United States shall indemnify Daniel Gahagan for the payment of any real property taxes, which shall have accrued against Parcel D-3 through the date of this Judgment. The balance of the proceeds shall be the property of the United States, for the use and benefit thereof.

Judgment of Forfeiture (Aug. 10, 2007); [Dkt. # 861].

On April 19, 2010, Claimant filed a "motion for clarification of judgment," contending that the U.S. Marshall did not sell the property in a "commercially reasonable manner" or indemnify him for the accumulated tax liability as directed. The Court directed the government to respond on April 27, 2010. The response was received on May 21, 2010. Claimant filed a reply on June 4, 2010. The motion is now ripe for determination without hearing. *See* E.D. Mich. L.R. 7.1(f)(2).

# I

Claimant first contends that the sale of the property was not carried out in a "commercially reasonable manner." Parcel D-3 was listed for sale on December 8, 2008 by a licensed realtor with more than thirty years of experience selling property in Ostego County. The property was listed approximately sixteen months after entry of the judgment. The judgment was affirmed by the Sixth Circuit Court of Appeals on March 20, 2009. [Dkt. # 894]. The property was sold for $50,000 on August 24, 2009, after it had been on the market for 260 days. *See* Aff. of Sheri Kimberly; [Dkt. # 900-C]. The realtor received only one offer on the property, from Thomas G. Cardelli, who was also a neighboring land owner.

Cardelli purchased all three parcels for a total $247,500. *See* Aff. of Sally Scholwalter; [Dkt. # 900-A]. D-3 was the smallest of the three parcels, and was landlocked. After Cardelli agreed to purchase parcel D-1, access to D-3 could only be obtained through Cardelli's property or from Douglas Lake. Parcel D-1, in addition to being larger, contained a large unfinished home and a pole barn. Parcel D-3 was unimproved. In September 2008, parcels D-1 and D-3 were appraised. The appraiser determined that the combined market value of the two properties was $180,000. [Dkt. # 900-G]. Both Sally Schowalter, an employee of the U.S. Marshals Service, asset forfeiture division, and Sheri Kimberly, the Ostego County realtor who sold the property, have provided sworn

testimony affirming that in their view parcel D-3 was sold in a commercially reasonable manner and $50,000 was a fair price under the circumstances. Aff. of Sally Scholwalter, [Dkt. # 900-A]; Aff. of Sheri Kimberly, [Dkt. # 900-C].

Plaintiff first contends that the sale was commercially unreasonable because the combined sale price for the three properties was $100,000 less than the "state equalized value" of the properties, and that market value is usually double "state equalized value." *See* Michigan Tax Tribunal, Glossary of Terms (defining "state equalized value" as "[o]ne half (1/2) of your property's true case value").[1] The state equalized value of parcel D-3 was $54,900 in 2010. Thus, according to the State of Michigan, the cash value of parcel D-3 should have been $109,800. Parcel D-1's state equalized value was $254,800 and parcel C-1's state equalized value is $46,400. Petitioner accurately contends that the estimated "cash value" of the properties, according to the State of Michigan, is $712,200, and the properties were sold for almost three times less than that value.

Although Claimant's contention has some merit, he does not consider market factors that invariably affect the value of the property. As the government emphasizes in its response, the sale closed in August 2009 in the middle of a poor economic climate that adversely affected property prices throughout much of Michigan. The fact that the property was sold for less than the state equalized value does not mean the property was sold in a commercially unreasonable manner.

Claimant next contends that the sale was commercially unreasonable because he was not informed of the sale until after it closed, and he would have paid "full market value" for parcel D-3 if he had been informed it was for sale. Claimant also contends that a potential buyer named Celeste LaValley would also have bid on the property. Judgment was entered in August 2007. Sixteen

---

[1] *See* http://www.michigan.gov/taxtrib/0,1607,7-187--126336--,00.html.

months later the property was listed for sale. The property was on the market for 260 days, and was advertised on the Multiple Listing Service ("MLS") and in a local newspaper. The property was sold two years after the judgment was entered. That fact that Claimant did not learn of the sale until after in occurred does not make the sale commercially unreasonable.

In his reply brief, Claimant argues for the first time that the sale was commercially unreasonable because the property was listed for sale before the appeal of this case was resolved, and the ongoing litigation reduced the value of the property. However, this Court's judgment was affirmed by the Court of Appeals on March 20, 2009, and the property was not sold until August 24, 2009, five months later. Although the ongoing litigation may well have adversely affected the value of the property, the timing of the sale was not commercially unreasonable.

## II

Claimant also contends that the government misinterpreted the judgment, and improperly withheld all the proceeds from the sale of parcel D-3. Claimant contends that the government improperly used the proceeds of the sale to pay taxes, contrary to the judgment's requirement that the government "indemnify" Claimant for all property taxes accrued on parcel D-3 through the date of the judgment. Plaintiff further contends that the Court's direction that the government divide the proceeds after payment of "expenses" referred only to expenses associated with the sale of parcel D-3 and not expenses associated with maintaining the property during the course of the litigation.

The government contends in response that Claimant was not held responsible for the payment of expenses associated with the sale of parcel D-3 because, "[i]n reality, the expenses of the sale of parcel D-3 were paid by the buyer and not imposed on Gahagan in any way." The government further contends that "the judgment required the government to indemnify Gahagan for

5

the pre-judgment property taxes out of the proceeds of the sale of parcel D-3." In the government's view, prejudgment property taxes amounted to more than $50,000, and the proceeds of the sale did not cover the taxes due.

There are two issues raised by Claimant's argument and the government's response. First, what does the term "expenses" include as used in the judgment? Second, did the government inappropriately construe the requirement that it indemnify Claimant for past-due taxes?

As for the first question, "expenses" are limited to those expenses directly arising from the maintenance and sale of parcel D-3. The expenses included closing costs, commissions, and other expenses of selling the property. Sally Schowalter of the U.S. Marshals Service asserts in an affidavit that costs associated with selling the three parcels amounted to a total of $19,048.17. Claimant's interest was limited to parcel D-3, which sold for $50,000, or about 20% of the total selling price of the three parcels. Twenty percent of the costs is $3,809.63. Since Claimant owned a half interest in parcel D-3, he is responsible for half those costs, or $1,904.81.

As for the second question, there is no basis for the government's interpretation of the indemnity requirement. The judgment directs the government to "indemnify Daniel Gahagan for the payment of any real property taxes." The judgment did not say that the government should provide indemnity *out of the proceeds of the sale*. The jury concluded that the government improperly excluded an innocent owner from the beneficial use of the property for nearly two decades, and, accordingly, should be responsible for the property taxes that accrued during the period the Claimant was excluded.

Accordingly, it is **ORDERED** that Claimant's motion for clarification is **GRANTED IN**

**PART AND DENIED IN PART**.

It is further **ORDERED** that the government is **DIRECTED** to pay Claimant Daniel Gahagan **$23,095.19**, plus interest accruing from August 24, 2009, on or before August 31, 2010. The amount is Claimant's half of the proceeds from the sale of parcel D-3, less his share of the expenses. Interest shall be calculated pursuant to 28 U.S.C. § 1961.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: August 2, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 2, 2010.

s/Tracy A. Jacobs  
TRACY A. JACOBS